# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSEPH ROSA NIEVES,

    Defendant.

CRIMINAL NO. 16-388 (PAD)

## OPINION AND ORDER

Delgado-Hernández, District Judge.

Defendant Joseph Rosa Nieves was charged with being a drug user possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Before the court is defendant's "Motion to Suppress Evidence" (Docket No. 23), which the government opposed (Docket No. 26). A hearing was held on December 16, 2016 (Docket No. 28), after which, defendant supplemented his motion to suppress (Docket No. 61) and the government opposed defendant's supplemental motion (Docket No. 65). For the reasons explained below, the motion to suppress is DENIED.

## I. BACKGROUND

Agent Ismael Feliciano of the Puerto Rico Police Department ("PRPD") pulled defendant's car over because his window tint was completely dark. See, Transcript of Suppression Hearing ("TR") at 7, 11-12, 32. As he did not have the machine or training to conduct a test of defendant's window tint, he asked defendant – the owner and driver of the vehicle – to go to the police station with him (TR. at 12-13, 16-17). Defendant agreed, taking the vehicle to the station house (TR. at 17 and 59). During the initial stop, Agent Feliciano smelled marijuana inside the vehicle (TR. at 14 and 33). In the station, the shift supervisor, PRPD Sergeant López, conducted the window tint test, confirming the presence of illegal tint (TR. at 18-20).

Agent Feliciano stood watching while Sergeant López conducted the test (TR. at 18). When Sergeant López was about finished with the test but before he had completed the test form, Agent Feliciano called a K-9 unit to the scene to investigate the vehicle (TR. at 20 and 39). No more than 10 minutes later, the K-9 unit arrived at the station (TR. at 21). The K-9 walked around defendant's car, "marking" the front driver's side door for illegal substances (TR. at 21-22, 40). Then (i) Agent Feliciano read defendant his Miranda rights (TR. at 23, 41), and (ii) defendant told Agent Feliciano that he had wanted to speak with him for a while and stated that he had "metal" (that is, a firearm) under the driver's seat of the vehicle (TR. at 24-25, 41). Agent Feliciano gave defendant the Miranda Rights in written form (TR. at 26), informed Rosa that he was detained (TR at. 46-47), handcuffed him, and took him inside the station (TR. at 27-28, 46-47).

Later that night, defendant made incriminatory statements to Homeland Security Investigation ("HSI") agents regarding knowledge of the firearm and marijuana use, and consented to a search of his vehicle (TR. at 53-54, 59-60). The agents searched the vehicle, finding and seizing a Glock 23 pistol and one high capacity magazine (TR. at 62-64). Defendant was charged, and has moved to suppress the incriminatory statements and the firearm, challenging (i) the prolongation of the traffic stop; (ii) the government's reliance on a K-9 without having provided evidence of the K-9's reliability; and (iii) use of a K-9 alert to arrest him without probable cause (Docket No. 61 at p. 2).[1] The sequence and analysis of relevant events follows.[2]

---

[1] In the motion to suppress, defendant initially challenged (i) the initial traffic stop duration; (ii) prolongation of the stop in the station; (iii) PRPD's failure to read him his Miranda rights upon arrival at the station despite PRPD's engaging in "accusatory questioning" while he was under custody; (iv) absence of a valid consent to search the vehicle; and (v) his subsequent admissions to HSI agents (Docket No. 23 at pp. 5-13). During the argument phase of the suppression hearing, defendant basically asked for suppression on the grounds stated in the text (TR. at 86-88, 99-100, 102-103, 105-107). As defendant's counsel explained, the arguments result from "the facts having come out in a different manner" than she was expecting (TR. at 99). For the same reason, the court limits its evaluation to the points raised in the supplemental motion.

[2] To the extent there are contradictions between the testimony of Agent Feliciano and that of the HSI case agent, the court credits Agent Feliciano's testimony.

## II.   DISCUSSION

**A. Initial Stop**.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Stopping and detaining a motorist constitutes a seizure within the meaning of the Fourth Amendment. See, Whren v. United States, 517 U.S. 806, 809-810 (1996)(so recognizing). The typical traffic stop resembles, in duration and atmosphere, the kind of brief detention authorized in Terry v. Ohio, 392 U.S. 1 (1968). See, United States v. Fernández, 600 F.3d 56, 59 (1st Cir. 2010)(describing Terry's application in a traffic-stop setting). Thus, law enforcement officers may stop a vehicle without a warrant if they have a reasonable suspicion of wrongdoing –a suspicion that finds expression in specific articulable reasons for believing that a person may be connected to the commission of a particular offense. See, United States v. Campbell, 741 F.3d 251, 261 (1st Cir. 2013)(articulating test); United States v. Washington, 455 F.3d 824, 826 (8th Cir. 2006)(same).

Agent Feliciano had an articulable and reasonable suspicion, amounting to probable cause, that defendant was violating Puerto Rico's Traffic Law. The vehicle defendant was driving had dark-tainted windows, which Agent Feliciano saw before ordering the driver to stop.[3] See, United States v. Santiago-Ramos, 991 F.Supp.2d 318, 323 (D.P.R. 2014)(concluding that patrolling agents had probable cause to stop vehicle, as its tinted windows were too dark in violation of Section 5285). Agent Feliciano confirmed that defendant – the vehicle's driver – was the registered owner. Given that the windows had to be tested by a photometer that Agent Feliciano was not certified to

---

[3] Article 10.05 of the Puerto Rico Traffic Law prohibits the use of one-way glass for the windshield and glass windows of vehicles or motor vehicles, as well as the altering thereof by applying tints and any other material or product used as a solar filter on the windshield and windows of motor vehicles to produce a percentage of transmission of visible light of less than thirty-five percent (35%). P.R. Laws Ann. tit. 9 § 5285.

use and did not have in the patrol car, he asked defendant to accompany him to the police station, and defendant agreed. Defendant was lawfully present in the station when the test was performed.

### B. Investigation

The tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission –to address the traffic violation that warranted the stop and to attend to related safety concerns. See, Rodríguez v. United States, 135 S.Ct. 1609, 1614 (2015)(explaining concept). The temporary seizure of driver and passengers ordinarily continues and remains reasonable for the duration of the stop, ending when the police have no further need to control the scene. See, Arizona v. Johnson, 555 U.S. 323, 333 (2009)(discussing principle). Information gained subsequent to the initial stop, however, may provide a basis for expanding the officer's investigation. See, United States v. Tiru-Plaza, 766 F.3d 111, 119 (1st Cir. 2014)(so noting).

In this way, the police may extend a stop beyond the scope of what was originally permissible with the driver's consent, or if something happened during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity was afoot. See, United States v. Stepp, 680 F.3d 651, 661 (6th Cir. 2012)(explaining basis for extension); United States v. Bates, 453 Fed.Appx. 839, 842 (10th Cir. 2012)(same).[4] The officer must work purposely to confirm or dispel his suspicions promptly. See, United States v. McGregor, 650 F.3d 813, 820 (1st Cir. 2011)(so observing). But there are no hard time limits. Id. (citing, *inter alia*, United States v Sharpe, 470 U.S. 675, 686 (1985)). Such a limit would undermine the need to allow authorities to graduate their response to the demands of any particular situation. Sharpe, 470 U.S. at 686.

---

[4] See also, 4 Wayne R. La Fave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.3(b) at p. 484 & n.67 (5th Ed.) (explaining that if lawfully acquired facts obtained subsequent to the initiation of the stop provide a reasonable suspicion of another offense, the other offense provides an alternative or superseding basis for the detention and, thus, permits an investigation directed at the latter offense).

The officer's actions here were permissible because they did not unreasonably extend the scope of the initial stop, and were independently supported by more than reasonable suspicion of criminal activity. When Agent Feliciano arrived with defendant in the station, he spoke with Sergeant López to test for the tint. Around the point when the last part of the test was performed, Agent Feliciano contacted Agent Mercado to bring in the K-9 unit to the station because he had smelled marijuana in defendant's vehicle during the initial traffic stop. At this juncture, the test form had not been filled in.

The K-9 unit arrived no more than 10 minutes after Agent Feliciano spoke with Agent Mercado (TR 21). Considering that Agent Feliciano had smelled marijuana in the vehicle; and the relatively short time the K-9 unit arrived after it was summoned, the intervention had not turned unreasonable when the K-9 unit walked around and marked defendant's car. See, Fernández, 600 F.3d at 59 (traffic encounter extended after active warrant was discovered during initial check and independently justified further detention).[5] Cf. Rodríguez, 135 S.Ct. at 1614, 1616-1617 (remanding case for determination of whether reasonable suspicion of criminal activity justified detaining defendant beyond completion of the traffic infraction investigation in order to conduct a dog sniff).[6] See also, United States v. Sanford, 806 F.3d 954, 959 (7th Cir. 2015)(holding that

---

[5] Agent Feliciano referred to the K-9's walking around defendant's vehicle as a "search" (TR. at 21) but said that he did not have to ask for consent to use a K-9 around the vehicle (TR. at 43). A canine sniff of the exterior of the vehicle which is legitimately within the custody of the police is not a search within the meaning of the Fourth Amendment. See, United States v. Rodríguez-Morales, 929 F.2d 780, 788-789 (1st Cir. 1991)(compiling cases). No consent is required to walk a K-9 next to, or around an automobile in those circumstances. See, United States v. Grant, 696 F.3d 780, 784 (8th Cir. 2012)(noting that a law enforcement officer need not obtain consent to conduct a dog sniff during an otherwise lawful encounter); United States v. Chavira, 9 F.3d 888, 890 & n.1 (10th Cir. 1993)(consent is not required for a dog sniff of a lawfully detained vehicle).

[6] Defendant alleges that he voluntarily accompanied Agent Feliciano to the station for a tint-test, not for a K-9 sniff, and thus, claims that the prolonged detention was beyond the scope of what he had agreed to (Docket No. 61 at p. 5). But that does not change the fact that Agent Feliciano had smelled marijuana in the vehicle during the initial stop, giving him probable cause to search it. See, United States v. Johnson, 630 F.3d 970, 974 (10th Cir. 2010)(smell of marijuana constitutes probable cause to search the subject vehicle); United States v. Mosby, 541 F.3d 764, 768 (7th Cir. 2008)(smell of marijuana alone is enough to give rise to probable cause to search the entire vehicle); United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999)(stating that "detection of the smell of burnt marijuana .. gave [the officer] probable cause to search the entire vehicle for drugs"). That Agent Feliciano opted to initially arrange for the tint-test in the station does not erase that incident from the sequence of events culminating in the arrest. An officer can stop a car if he sees a driver commit a traffic offense, even if the stop is just an excuse to investigate something else. See, Mc Gregor, 650 F.3d at 829 (citing Whren, 517 U.S. at 810). See also, United States v. Kellam, 568 F.3d 125, 136 (4th Cir.

reasonable suspicion justified the officer in prolonging the stop by about eight minutes to wait for the arrival of the drug dog to confirm or dispel suspicion with the dog's assistance).

**C. Arrest**

Defendant argues that the arrest was illegal and not supported by probable cause because the government did not establish the K-9's credentials or reliability (Docket No. 61 at pp. 2, 7-10). He contends that even if the reliability of the K-9 were not an issue, the alert cannot support a warrantless arrest, for the alert may provide probable cause to search, but not to arrest. Id. at pp. 2, 10.

A warrantless arrest is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. See, Devenpeck v. Alford, 543 U.S. 146, 152 (2004)(so holding). The standard applies to offenses under state law, regardless of whether state law authorizes an arrest for that particular offense. See, Virginia v. Morre, 553 U.S. 164, 176 (2008)(stating principle). To establish probable cause, the government must demonstrate that at the time of the arrest, the facts and circumstances known to the arresting officer were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense. See, United States v. Bizier, 111 F.3d 214, 216-217 (1st Cir. 1997)(so holding).

The K-9 unit marked the driver's side of the vehicle, after which (i) Agent Feliciano gave defendant Miranda warnings; (ii) defendant spontaneously told him he wanted to speak with him, expressing there was metal under the driver's seat; and (iii) defendant was detained, handcuffed,

---

2009)(…"[I]f an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment … regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity"). Defendant points out that Agent Feliciano testified that marijuana has a pungent smell that can linger even if no drugs are present and that he did not see any drugs when he pulled the car over (Docket No. 61 at p. 2). There is no need to rule out the possibility of innocent conduct in order to find reasonable suspicion. See, United States v. Pettit, 785 F.3d 1374, 1383 (10th Cir. 2015)(so acknowledging).

and taken inside the police station. Setting aside the K-9's marking of the vehicle, defendant's spontaneous statement generated probable cause to believe that a violation of Puerto Rico's Weapon's Law had been committed in the officer's presence, and by extension, sustains defendant's arrest under the Fourth Amendment. See, Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender"). In consequence, defendant was lawfully in custody when HSI agents interfaced with him in the stationhouse and he waived his Miranda rights, admitted knowledge of the firearm as well as being a marijuana user, and consented to the vehicle's search. See, New York v. Harris, 495 U.S. 14, 18 (1990)(denying request to suppress an incriminatory statement because the defendant was not unlawfully in custody when he was removed to the station house, given Miranda warnings, and allowed to talk).

### III. CONCLUSION

The touchstone of fourth amendment analysis is reasonableness. The police acted in compliance with the constitutional standard. On that basis, the motion to suppress as supplemented must be DENIED.

**SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of June, 2017.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
U.S. DISTRICT JUDGE